IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**GEORGIANA M. P.,**

   **Plaintiff,**

   **vs.**                                        **CIV NO. 1:25-cv-00057-KRS**

**FRANK BISIGNANO,**
**Commissioner of Social Security Administration,**

   **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff Georgiana M. P.'s ("Plaintiff") Motion to Reverse and Remand to Agency with Supporting Memorandum, ("Motion"), (Doc. 15), dated June 18, 2025, challenging the determination of the Commissioner of the Social Security Administration ("SSA" or the "Commissioner") that Plaintiff is not entitled to disability benefits she is not entitled to disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401–34, 1381–83f. The Commissioner responded to Plaintiff's Motion on August 4, 2025, (Doc. 20), and Plaintiff filed a reply on August 18, 2025, (Doc. 21). Plaintiff filed a Notice of Completion of Briefing that same day. (Doc. 22).

The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has meticulously reviewed the administrative record. Having done so, the Court concludes that the Administrative Law Judge ("ALJ") erred in her decision and will therefore **GRANT** Plaintiff's Motion and **REMAND** this case back to the SSA for proceedings consistent with this

opinion.

## I.     PROCEDURAL POSTURE

On August 10, 2020, Plaintiff filed her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (*See* Administrative Record ("AR") at 11, 75, 91, 257-67).[1] Plaintiff alleged an onset date of May 27, 2020, at 44 years and 1 month of age, due to: degenerative disc disease of the cervical spine, rotator cuff dysfunction and degenerative joint disease of the acromioclavicular (AC) joint of the right shoulder, obesity, attention deficit hyperactivity disorder ("ADHD"), inattentive type, and depressive disorder. (*Id.* at 8-26, 75, 91). Plaintiff's date last insured, the date through which she could be eligible to receive disability insurance benefits, was September 30, 2025. (*Id.* at 11, 13).

Plaintiff's application was denied at the initial level on March 24, 2021, (*id.* at 11, 75-90, 91-106), and upon reconsideration on June 30, 2023, (*id.* at 11, 149-56). Plaintiff requested a hearing on July 20, 2023, (*id.* at 11, 107-23, 124-40), which ALJ Evelyn Maiben ("ALJ Maiben" or the "ALJ") conducted via videoconference on June 10, 2024, (*id.* at 11, 34-74). Plaintiff was represented by counsel and testified at the hearing, (*id.* at 11, 34-35, 42-68), as did Vocational Expert Lynn Stanley ("VE"), (*id.* at 11, 38-39, 68-73).

On June 25, 2024, the ALJ issued an unfavorable decision. (AR 8-26). On January 2, 2025, the Appeals Council denied Plaintiff's request for review, (*id.* at 1-7), making the ALJ's decision the Commissioner's final decision. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On January 21, 2025, Plaintiff timely filed a Complaint seeking judicial review of the Commissioner's final decision. (Doc. 1).

---

[1] Document 10 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

II.    **LEGAL STANDARDS**

A.    **Standard of Review**

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." (*Id.* at 1262 (citation omitted)). While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." (*Id.* at 1010 (quotation omitted)). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted).

B.    **Disability Determination Process**

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051–52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the Commissioner will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24; 20 C.F.R. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) she is not engaged in "substantial gainful activity"; (2) she has "a severe medically determinable physical or mental impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) her impairment(s) meets or equals one of the "Listings" of presumptively disabling impairments; or (4) she is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv) (citing *id.* § 404.1509); *Grogan*, 399 F.3d at 1261.

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ "determine[s] the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id.* at 1024 (quoting Social Security Ruling ("SSR") 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the

claimant is capable of meeting those demands. *Id*. at 1023, 1025.

The claimant must prove that, based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a *prima facie* case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## III.    THE COMMISSIONER'S FINAL DECISION

ALJ Maiben determined at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, May 27, 2020. (AR at 13). At step two, she found Plaintiff had severe impairments of: "degenerative disc disease of the cervical spine; rotator cuff dysfunction and degenerative joint disease of the acromioclavicular (AC) joint of the right shoulder; and obesity." (*Id.*) The ALJ also concluded Plaintiff's mental impairments of ADHD, inattentive type, and depressive disorder were non-severe. (*Id.* at 14-15). The ALJ deduced at step three that Plaintiff's impairments or a combination of impairments did not meet or equal in severity in any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 15). ALJ Maiben also found that Plaintiff did not have mental impairments, singly or in combination, that medically met or equaled the listings' criteria. *Id*. Thus, the ALJ proceeded to assess Plaintiff's physical and mental records, prior administrative findings, consultative examiner reports, and Plaintiff's function report, and hearing testimony to craft Plaintiff's RFC. (*Id.* at 14-19). Based on her assessment, the ALJ concluded that Plaintiff had:

> the [RFC] to lift, carry, push, or pull a maximum of 10 pounds occasionally and 10
> pounds frequently; sit 6 hours in an 8-hour workday; and stand and/or walk 2 hours

in an 8-hour workday. The claimant can occasionally climb, stoop, and crawl and occasionally reach overhead with the right upper extremity.

(*Id.* at 16). At step four, ALJ Maiben found Plaintiff was unable to perform her past relevant work as an instrumentation fitter. (*Id.* at 19). She also made alternative step five findings. (*Id.*) She determined that there were other jobs "that exist[ed] in significant numbers in the national economy" that Plaintiff could perform considering her RFC, age, education, and work experience. (*Id.* at 20-21). Specifically, ALJ Maiben relied upon the VE's testimony to find Plaintiff could perform the requirements of: (1) "addresser (DOT 209.587-010, sedentary, SVP-2)" with 12,200 jobs nationally; (2) "document preparer (DOT 249.587-018, sedentary, SVP-2)" with 19,000 jobs nationally; and (3) "table worker (DOT 739.687-182, sedentary, SVP-1)" with 16,200 jobs nationally. (*Id.* at 20.). In formulating this finding, the ALJ stated that at the disability hearing the VE "explained that the addresser position no longer involves hand addressing and that labels are generally computer generated and that the document preparer position does not use microfiche, but rather a computer scanner." (*Id.*) The VE further testified, nevertheless, that "while the tools used to perform the position have changed, the essential job functions remail the same." (*Id.*) ALJ Maiben confirmed that she "determined that the [VE's] testimony" was "consistent with the information contained in the *Dictionary of Occupational Titles*" ("DOT") in accordance with SSR 004p. (*Id.* at 21). She thus concluded that Plaintiff was not disabled from May 27, 2020, through June 25, 2024. (*Id.*)

## IV.    PARTIES' ARGUMENTS

Plaintiff contends remand is warranted for three reasons with sub-arguments. First, ALJ Maiben failed to properly assess the opinion of DDS Consultative Examiner Tosheiba Holmes, M.D. ("Dr. Holmes"). (Doc. 15 at 6-11). Specifically, the ALJ should have resolved any ambiguity in Dr. Holmes' opinion that Plaintiff had "*limited* ability to reach, handle or grasp" prior to

determining the persuasiveness of Dr. Holmes' opinion. (*Id.* at 8-9 (citing AR at 18)) (emphasis added). Plaintiff suggests that because the ALJ found the term "limited" vague that she should have contacted Dr. Holmes in accordance with 20 C.F.R. § 404.1520b(b)(2). (*Id.*) Next, Plaintiff argues ALJ Maiben's findings lack substantial evidence in relation to the supportability and consistency factors that an ALJ must address when evaluating a medical opinion under the revised regulations. (*Id.* at 9-11).

Plaintiff's second and third arguments on appeal are intertwined and pertain to the ALJ's step five conclusions. First, the ALJ failed to resolve an apparent conflict between the VE's testimony and the DOT because the jobs "Addresser" and "Document Preparer" are obsolete. (Doc. 15 at 11-19). Plaintiff's contention relies upon an Emergency Message, EM-24027 (Jun. 22, 2024), that was published days prior to the ALJ's unfavorable decision. (*Id.* at 11-12). According to Plaintiff, ALJ Maiben was "required" to further develop the record to determine if there were any conflicts between the VE's testimony, the DOT, and Plaintiff's RFC in light of the technological advancements rendering addresser and document preparer obsolete. Plaintiff contends the ALJ did not do that here. Plaintiff also cites to a plethora of pre-EM-24027 Circuit cases wherein the courts found "Addresser" and "Document Preparer" obsolete and did not exist in significant numbers in the national economy *prior* to the Emergency Message. *See id.* at 12-14. Plaintiff directs this Court to Magistrate Judge Kirtan Khalsa's holding in *Milner v. Kijakazi*, No. 20-CV-1016-KK, 2022 U.S. Dist. LEXIS 69800 (D.N.M. Apr. 15, 2022), wherein the Court held that a "reasonable mind could not accept the VE's testimony as adequate to support the conclusion that significant numbers of addresser and tube operator positions exist in the national economy" in light of the technological advances since those job descriptions were last updated in the DOT in

1977. 2022 U.S. Dist. LEXIS 69800, at *31-32.[2] Finally, ALJ Maiben failed to perform a *Trimiar* analysis that is required at step five. (*Id.* at 19 (citing *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992)). Plaintiff contends that the ALJ's errors are not harmless because eliminating the jobs of document preparer and addresser leaves only 16,200 available national jobs and is a number too low to justify supplying factual inferences about its significance.

In regard to Plaintiff's step five objections, the Commissioner counters that the Emergency Message stated that an ALJ could use addresser and document preparer at step five if the ALJ elicited certain information. (Doc. 20 at 11). Particularly, "additional evidence from [a VE] supporting the [ALJ's] conclusion that, as the occupation is currently performed" falls within the claimant's RFC. (*Id.* at 11-12 (citing EM-24027)). And, in this case, the ALJ specifically asked the VE if the occupations were performed differently today in comparison to the DOT descriptions. (*Id.* at 11 (citing AR at 71)). The Commissioner asserts that the VE's response that the occupations required "modern equipment," but the "essential functions" were the same was sufficient and in compliance with the Emergency Message. (*Id.*) Any additional questions, as Plaintiff posits, are speculative and does not undermine the substantial evidence supporting the ALJ's step five findings. (*Id.* at 11-12). He concludes that Plaintiff was required to identify issues to further develop the record pertaining to the job descriptions and the national numbers because Plaintiff was represented by counsel. (*Id.*) Accordingly, the VE's testimony constitutes substantial evidence

---

[2] Plaintiff does not fully articulate how *Milner* is analogous other than the Court found the job "addresser" obsolete and remanded on the basis that the VE's statistical data regarding job numbers was unreliable. The Commissioner's response fails to raise any counter argument as to the application of *Milner* to the instant case. In *Milner*, at a supplemental disability hearing, the ALJ specifically asked the VE to identify where he obtained the statistical data related to the proposed jobs. *Id.* at *11-14. The plaintiff argued in a post-hearing brief that the VE's testimony was unreliable because the VE was unable to articulate the methodology for the job numbers he obtained from publications and computer programs. *Id.* at *14. *Milner* is persuasive in that this Court found the job addresser obsolete and challenged the reliability of the statistical data of the number of national jobs for addresser. Notwithstanding, *Milner* is factually distinguishable because neither ALJ Maiben nor Plaintiff's counsel elicited similar testimony questioning the methodology of the statistical data.

the ALJ was not required to perform a *Trimiar* analysis to jobs in the national economy. (*Id.* at 12-13).

For the reasons discussed herein, the Court finds that the ALJ failed to resolve an apparent conflict between the VE's testimony regarding the statistical numbers in the nation and the DOT at step five. The Court thus finds that ALJ Maiben's determination that a significant number of jobs were available to Plaintiff in the national economy is not supported by substantial evidence. The Court further finds on harmless error review that had ALJ Maiben identified the conflict, obtained a reasonable explanation for the conflict, and explained how the conflict was resolved in her decision, then she may have found Plaintiff disabled. Accordingly, remand of this case is required.

## V.    DISCUSSION

### A.    The ALJ Failed to Resolve an Apparent Conflict Before Relying on the VE Evidence to Find No Disability

The burden shifts to the Commissioner at step five to show with substantial evidence that sufficient jobs exist in the national economy for a person with the claimant's impairments, age, education, and work experience. *See Jensen v. Barnhart*, 436 F.3d 1163, 1168 (10th Cir. 2005); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). An ALJ may rely on a vocational expert's testimony to show substantial evidence. *Biestek*, 139 S. Ct. at 1157. The hypothetical posed to the vocational expert "must reflect with precision all—and only—the impairments and limitations borne out by the evidentiary record." *Rivera v. Berryhill*, 242 F. Supp. 3d 1226, 1237 (D.N.M. 2017) (citing *Grotendorst v. Astrue*, 370 Fed. Appx. 879, 883 (10th Cir. 2010)); *see Thompson v. Colvin*, 551 F. App'x 944, 949 (10th Cir. 2014). The vocational expert's response to a hypothetical reflecting all impairments meets the substantial evidence standard for the ALJ's

disability decision. *Rivera*, 242 F. Supp. 3d at 1237 (internal citation omitted).

The Tenth Circuit has held that "before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of no disability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for any discrepancy on this point." *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999) (emphasis added). The Tenth Circuit later clarified that *Haddock's* holding extends to nonexertional limitations. *See Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005). In unpublished but persuasive caselaw, the Tenth Circuit adopted another court's characterization of the ALJ's inquiry burden:

> [T]o the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT . . . the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so . . . . [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing. Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is per se controlling, permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs.

*Gibbons v. Barnhart*, 85 F. App'x 88, 93 (10th Cir. 2003) (unpublished) (quoting *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000)); *see also, e.g., Kyle Edward Victor G. v. Saul*, No. 19-cv-2518-JWL, 2020 WL 3960422, at *9 (D. Kan. July 13, 2020) ("SSR 00-4p requires the ALJ to address apparent conflicts, not all conflicts."). However, absent any actual conflict, the ALJ's failure to make such an inquiry is harmless. *See Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) ("Although we agree that the ALJ erred by not inquiring about whether there were any conflicts between the VE's testimony about the job requirements for the jobs identified and the job

descriptions in the DOT, we conclude that this error was harmless because there were no conflicts.").

Here, ALJ Maiben failed to resolve the apparent conflict between the VE's testimony, the DOT descriptions, and the RFC regarding whether Plaintiff could perform the essential functions of addresser and document preparer.[3] The SSA's June 2024 Emergency Message "clarifie[d] and consolidate[d] guidance" for step five findings involving certain occupations, including relevant here, document preparer and addresser. *See* Guidance Regarding the Citation of Certain Occupations at Step Five of the Sequential Evaluation Process, EM-24027 (effective date June 22, 2024), https://secure.ssa.gov/apps10/referencearchive.nsf/links/06212024022159PM. The agency reaffirmed that "we take administrative notice of the DOT" but acknowledged that "[s]ome courts have questioned whether some occupations continue to be performed in the manner that they are described in the DOT." *Id.* § B. It advised that:

> An adjudicator may not cite any of the DOT occupations listed below to support a framework "not disabled" determination or decision without additional evidence from a VS or VE supporting the adjudicator's conclusion that, as the occupation is currently performed:
>
> • Its requirements are consistent with the individual's RFC, and
>
> • It exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant.

*Id.* § C.

At the hearing, the ALJ elicited scant testimony from the VE regarding the job descriptions and their current "essential functions." For "addresser" the VE testified that the job functions are now performed "with computer generated self-adhesive addresses to be affixed to parcels." (AR

---

[3] The Court finds it relevant to clarify that in making this holding it does not also hold that the DOT, in its entirety, is obsolete and not a reliable source. The Court recognizes that SSA regulations and policy direct ALJs to consider the DOT as "reliable job information" and to "rely primarily on the DOT . . . for information about the requirements of work in the national economy" for disability determinations. SSR 00-4p, 2000 SSR LEXIS 8, *4, 2000 WL 1898704, at *2; see also 20 C.F.R. § 404.1560(b)(2); 20 CFR § 404.1566(d)(1); *see Haddock*, 196 F.3d at 1089-90.

at 71). As for "document preparer," the VE testified, 'we're not seeing microfiche, we're seeing a computer scanner system." (*Id.*) Nothing more, other than the VE's conclusory statement that the "essential functions remain the same" was elicited from the VE. This Court recently found that an ALJ satisfies the SSR 004p and the Emergency Message when he or she establishes an inquiry detailing the actual functions including what type of technology and how that technology interacts with the claimant's RFC. *See Angelina S. v. Bisignano*, No. 25-346 SCY, 2026 LX 71267, at *10 (D.N.M. Jan. 2, 2026). ALJ Maiben's inquiry did not meet that standard. The Court also finds the Commissioner's conclusory assertion that, under the facts in this case, Plaintiff's failure to call into question the unchallenged VE testimony constitutes substantial evidence. (Doc. 20 at 12). It is well-established that at step five the ALJ, not the claimant, bears the burden of showing with substantial evidence that sufficient jobs exist in the national economy. *See Jensen*, 436 F.3d at, 1168; *Thompson*, 987 F.2d at 1487. As such, the ALJ erred in failing to resolve the apparent conflict and improperly relied on the job of addresser and document preparer, without confirming that the occupations as currently performed are consistent with Plaintiff's RFC.

Next, the Court finds that ALJ Maiben was not required to conduct a *Trimiar* analysis to establish that the total national job number of 16,200 in the first instance was significant. In *Trimiar*, the issue was whether 650 to 900 jobs existing in the region constituted a "significant number" for purposes of the statute. 966 F.2d at 1330 (citing 42 U.S.C. § 423(d)(2)(A) (1991)). The Tenth Circuit listed "several factors" borrowed from the United States Court of Appeals for the Eighth Circuit that "go into the proper evaluation of significant numbers." *Id.* (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)). Those factors included (1) the level of claimant's disability; (2) the reliability of the vocational expert's testimony; (3) the distance claimant is capable of traveling to engage in the assigned work; (4) the isolated nature of the jobs; and (5) the

types and availability of such work. *Id.* With those factors in mind, the Tenth Circuit ultimately determined that substantial evidence supported the ALJ's decision. *Id.* at 1332.

In subsequent cases, the Tenth Circuit has offered guidance on when those factors apply. In *Raymond v. Astrue*, 621 F.3d 1269, 356 Fed. Appx. 173 (10th Cir. 2009), the question before the Court was whether or not the job of rental clerk existed in significant enough numbers. *Id.* at 177. In reliance on *Trimiar*, the claimant argued that a significant number of jobs must exist in the regional economy and "that the ALJ should have engaged in a multi-factor analysis" to make that assessment. 621 F.3d at 1274, n. 2. The Tenth Circuit rejected the claimant's argument, holding that the controlling statutes, federal regulations, and caselaw all indicate that the proper focus is generally on jobs in the national, not regional, economy. *Id.* The Court also distinguished the facts in *Trimiar* and noted that *Trimiar* does not hold that only regional jobs are relevant, or that a court must engage in a factorial analysis when the number of jobs available is much larger than the number of jobs that were available in *Trimiar*, *i.e.*, 650 to 900. *Id.* at 178, n. 2.

This District has taken this direction to mean "that the *Trimiar* analysis does not extend to the question of whether there are significant numbers of nationally available jobs." *Rodriguez v. Berryhill*, 2018 WL 1627209, at *5 (D.N.M. Mar. 31, 2018) (internal quotation marks and citation omitted). Indeed, "the multi-factorial analysis required by *Trimiar* focuses on factors relevant in analyzing the true availability of local job opportunities on a more particularized inquiry as to the specific claimant under consideration." *Id.* (alteration, internal quotation marks and citation omitted). "Thus, where the focus is on the national availability of jobs[,] the particularized *Trimiar* inquiry would confuse the issues." *Id.* (alteration, omission, internal quotation marks, and citation omitted). The Court is guided by this standard.

The question that remains, therefore, is whether the ALJ's error in failing to resolve the

apparent conflict between the VE's testimony and the DOT, the result of which is fewer national jobs available to Plaintiff, is harmless. It is undisputed that the ALJ did not consider in the first instance whether 16,200 national jobs for table worker is a "significant number."[4] Had she done so, the Court would be justified in affirming the decision as to this issue. *See Sears v. Berryhill*, 2018 U.S. Dist. LEXIS 73697, 2018 WL 2002487, *10 (D.N.M. April 30, 2018) (noting that a substantial evidence review would support that 50,000 was a significant number of jobs). However, that is not the case here. As such, the Court must apply the more rigorous harmless error standard and determine whether it can confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way. In other words, that 16,200 jobs is so significant a number that no reasonable factfinder would consider it insignificant. *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004). In the Tenth Circuit, what constitutes a "significant number[]" of jobs, as that term is used in 42 U.S.C. § 423(d)(2)(A), is not established by a "bright line." *Trimiar*, 966 F.2d at 1330. Rather, "each case should be evaluated on its individual merits." *Id.* Proper analysis of the question of what amounts to numerical significance does not involve "judicial line-drawing" and "entails many fact-specific considerations requiring individualized evaluation." *Id.* Finally, "and, most importantly, . . . the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* (internal quotation marks and citation omitted).

The Commissioner cites a number of cases from other districts within the Tenth Circuit with findings to support its position that the ALJ was not required to perform a *Trimiar* analysis.

---

[4] The VE testified that there were a total of 47,400 jobs nationally based on the occupations of addresser, document preparer, and table worker. The Court's assessment as to harmful error is based on only 16,200 national jobs as a table worker as that is the only remaining occupation in light of the ALJ's error to resolve the apparent conflict between the VE's testimony, the DOT, and the Plaintiff's RFC.

*See* (Doc. 20 at 13-14). He does not assert that the cases should be applied or considered in opposition to Plaintiff's harmless error argument. *See id.* Even assuming the Commissioner intended to argue that those cases supported finding harmless error because 16,200 jobs is a significant number, the Court is unpersuaded. In cases from this District jurists have been unwilling "to make that sort of sweeping pronouncement" that job numbers higher than 16,200 are significant under a harmless error review. *See Sears*, 2018 WL 2002487, at *11 (applying harmless error standard and remanding because ALJ had not determined whether 50,000 national jobs were significant); *see also Bright v. Saul*, 2020 U.S. Dist. LEXIS 52532, 2020 WL 1450548, at *5 (D.N.M. March 25, 2020) (applying harmless error standard and remanding because a reasonable factfinder could conclude that 60,000 jobs is not significant under facts of the case); *Devlin v. Saul*, 2020 U.S. Dist. LEXIS 142154, 2020 WL 4583869, at *6 (D.N.M. Aug. 10, 2020) (applying harmless error and declining to conclude as a matter of law that 55,700 jobs in the national economy constitutes a significant number) (citing cases)); *Saiz v. Kijakazi*, 2022 U.S. Dist. LEXIS 66932, 2022 WL 1078576, *8-10 (D.N.M. April 11, 2022) (applying harmless error and remanding because ALJ did not find that 134,000 nationally available jobs amounts to significant number and citing cases with similarly high numbers) (citing cases)).

This Court previously applied the harmless error analysis to find that the number of positions nationally was significant after it eliminated one of three jobs that the ALJ identified. *See Kupfer v. Kijakazi*, 2023 U.S. Dist. LEXIS 117687, 2023 WL 4421201, *6 (D.N.M. July 10, 2023). In that case, after finding the ALJ erred in failing to resolve an apparent conflict as to one job, the remaining two jobs provided a total of 164,000 positions nationally. *Id.* The Court concluded that persuasive Tenth Circuit caselaw supported that 164,000 jobs was a significant number for application of harmless error. *Id.* (citing *Stokes v. Astrue*, 274 F. App'x 675, *7 (10th

Cir. 2008) (considering 11,000 jobs regionally and 152,000 nationally and finding that no reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region or several regions of the county jobs nationally did not exist in significant numbers)). But 164,000 national jobs is a much higher number than the 16,200 national jobs at issue here and the Court is not prepared to conclude that 16,200 jobs is so significant a number that no reasonable factfinder would consider it insignificant. Particularly in this case where, as Plaintiff emphasizes and the Court agrees, the Commissioner did not respond to Plaintiff's harmful error analysis and, as such, constitutes consent to grant the Motion on this issue. *See Benson v. Saul*, No. 19-CV-0457 SMV, 2020 WL 3448046, at *5 (D.N.M. June 24, 2020), citing D.N.M.LR-Civ. 7.1(b) ("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion.")). The Court thus declines to find as a matter of law that 16,200 jobs in the national economy constitutes a significant number.

### B.    Remaining Claims

Plaintiff advances additional arguments in support of her Motion. *See* Section IV. The Court declines to address Plaintiff's remaining objections because they may be affected by the ALJ's treatment of the case on remand. *See Watkins v. Barnh*art, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## VI.    CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff Georgiana M. P.'s ("Plaintiff") Motion to Reverse and Remand to Agency with Supporting Memorandum, (Doc. 15), is **GRANTED**. **IT IS FURTHER ORDERED** that the Commissioner's final decision is **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this

Memorandum Opinion and Order.

**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**